UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DEXTER DEE HICKS, ) | |
| ) | Civ. No: 12-147-GFVT |
| Plaintiff, ) | |
| ) | |
| V. ) | **MEMORANDUM** |
| ) | **OPINION** |
| CAROLYN W. COLVIN, Acting ) | **&** |
| Commissioner of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Dexter Dee Hicks, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Hicks's application for a period of disability and disability insurance benefits (DIB).  The Court, having reviewed the record and for the reasons set forth herein, will DENY Dexter Hicks's Motion for Summary Judgment [R. 17] and will GRANT the Commissioner's Motion for Summary Judgment.  [R. 15.]

**I**

Dexter Hicks filed an application for a period of disability and DIB on July 31, 2009. [Transcript (Tr.) 131-32.]  He alleges a disability beginning on December 12, 2007, the day after a previous Administrative Law Judge (ALJ) issued a decision denying his previous application for DIB.  [Tr. 69-78, 131.]  Hicks's application for DIB alleges a variety of problems including shoulder and back pain, nerve problems, migraine headaches, blackouts, and anxiety.  [Tr. 144, 162-63.]  The instant application was denied initially in November 2009 and again upon reconsideration on March 30, 2010.  [Tr. 11, 79-89.]  At Hicks's request, an administrative

hearing was conducted before ALJ Todd Spangler on October 7, 2010.  [Tr. 24-64.]  During the hearing, the ALJ heard testimony from Hicks and from vocational expert (VE) James H. Miller. [*Id.*]  Following the hearing, ALJ Spangler issued a decision denying Hicks's application on November 18, 2010.  [Tr. 11-18.]  Hicks, who was forty-eight years old as of the alleged onset date, has a limited education, having only completed the eighth grade.  [Tr. 30-31.]  Hicks's past relevant work includes working in construction as a carpenter and a drywall hanger. [Tr. 17, 32, 145.]  Although the VE testified at Hicks's hearing that Hicks could no longer perform his past relevant work, he also testified that there are several types of jobs that exist in significant numbers in both the regional and national economies that Hicks could perform despite his limitations, and the ALJ accepted that testimony. [Tr. 60-63, 17-18.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis.  *See* 20 C.F.R. 404.1520.[1]  First, if a claimant is performing a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled."  20 C.F.R.

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520.  Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

§404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." § 404.1520(f).

In this case, at Step 1, the ALJ found that Hicks has not engaged in substantial gainful activity during the period from his alleged onset date of December 12, 2007 through his last insured date of December 31, 2009. [Tr. 13.] At Step 2, the ALJ found that Hicks suffers from the following severe impairments: right shoulder tendonitis, arthritis in the shoulder, and anxiety. [Tr. 13.] At Step 3, the ALJ found that Hicks's impairments, whether considered alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 13-14.] Before moving to Step 4, the ALJ considered the entire record and determined that Hicks possessed the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except for certain physical and mental limitations which were described as follows:

> . . . [The claimant] is unable to reach overhead with the right upper extremity, is unable to climb ladders, ropes, or scaffolds, and is unable to perform work around hazards such as moving machinery and unprotected heights. Mentally, the claimant is capable of performing one, two, and three step instructions with no more than occasional contact with co-workers, supervisors, or the general public.

3

[Tr. 14.] After explaining in significant detail how he determined Hicks's RFC [Tr. 14-17], the ALJ found at Step 4 that based on this RFC, Hicks is unable to perform any past relevant work. [Tr. 17.] At Step 5, the burden shifted to the Commissioner to identify a significant number of jobs in the national economy that Hicks could perform, given his RFC, age, education, and experience. *Jones*, 336 F.3d at 474; 20 C.F.R. § 404.1520(g); 20 C.F.R § 404.1560(c). Here, the ALJ concluded that, based on Hicks's RFC and the VE's testimony, there are jobs that exist in significant numbers within both the national economy and regional economy that Hicks could perform. [Tr. 17-18.] Accordingly, on November 18, 2010, the ALJ issued an unfavorable decision, finding that Hicks was not disabled, and therefore ineligible for DIB. [Tr. 18.] The Appeals Council declined to review the ALJ's decision on July 6, 2012 [Tr. at 1-6], and Hicks now seeks judicial review in this Court.

**II**

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Ulman*, 693 F.3d at 714 (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### A

Hicks's motion for summary judgment first contends that the ALJ erred because "the overwhelming weight of treating and examining physician opinions prove" that Hicks is "totally disabled." [R. 17-1 at 14.] The Court notes at the outset that because the treating physician's opinion is not the only basis for determining whether a person is "disabled" for purposes of DIB, the more appropriate inquiry concerning treating physicians is whether the ALJ gave the appropriate weight to the opinion of Hicks's treating professionals. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009) (describing the focus of review as determining whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence). Under 20 C.F.R. § 404.1527(d)(2), a treating source's opinion on the issues of the nature and severity of a claimant's impairments is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. §404.1527(d)(2)); *see also Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993) ("This court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). If the ALJ gives less than controlling weight to opinions from treating physicians, however, the ALJ must give "good reasons" for doing so, 20 C.F.R. § 404.1527(d)(2), and must explain what weight, if any, the treating physician's opinion warrants. §404.1527(c)(2).

Here, although Hicks discusses at great length the legal standard for considering a treating physician's opinion, he fails to point out how the ALJ did not follow that standard. Hicks's entire argument on this point is as follows:

> At the hearing [Hicks] named his treating physician. Thus, benefits should be granted because the overwhelming weight of the treating and examining physician opinions prove that [Hicks] is totally disabled.

[R. 17-1 at 16.] Naming treating physicians during a hearing does not establish that a person is "disabled" for purposes of DIB. Hicks's assertion here merely reveals his disagreement with the ALJ's finding, but does not apply the legal standard to the facts of his case. More than mere disagreement with the ALJ's conclusion or the weight the ALJ ascribed to certain opinions is required to successfully assign error to an ALJ's findings. *See, e.g., Richards v. Astrue*, at *8 (N.D.Ohio, June 8, 2012) (quoting *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105, at *7 (W.D.Mich. Mar. 26, 2012)). In fact, Hicks's attorney has previously been warned by another court in this district that simply setting forth applicable legal standards with no attempt to explain how those standards were incorrectly applied is insufficient and could justify the Court in deeming Hicks's arguments waived. *Hicks v. Astrue*, 2010 WL 399099, at *3 (E.D.Ky. Jan. 26, 2010) (warning that the court is inclined to dismiss claims that "merely provid[e] . . . conclusory

statements that the ALJ's findings are incorrect and claim that as a result he is entitled to disability benefits"); *see also Indeck Energy Servs. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000) (noting that issues presented in a perfunctory manner with no effort at developed argumentation are deemed waived). Nevertheless, the Court will briefly address the question of whether the ALJ properly considered the opinion of treating physicians.

First, the only treating physicians Hicks named in his testimony during the hearing were the following: Dr. Pratt, who first diagnosed Hicks with anxiety in 2004 or 2005 and has since passed away [Tr. 44]; Hicks's psychiatrist Dr. Melbourne Williams, whom Hicks was visiting every two months at the time of the hearing [Tr. 39-40]; and Dr. Arthur Portales, whom Hicks saw for pain management and who prescribed Percocet to Hicks [Tr. 45-46]. Hicks also referred to an unnamed doctor in Hyden, Kentucky, who apparently prescribed him Methadone at some point [Tr. 45].[2] At the time of the hearing, Hicks testified he did not have a family doctor, and it does not appear from his testimony or from the evidence in the record that he has had a treating physician since 2005 other than his psychiatrist and perhaps various doctors at the Anne Wasson Pain Clinic such as Dr. Varghese.[3] [Tr. 45, 53-54.]

Second, the ALJ did not ignore the opinions of these treating professionals. Despite the early date of Dr. Pratt's records, the ALJ noted that Dr. Pratt confirmed Hicks suffered from right shoulder rotator cuff tendonitis for which he prescribed Lorcet. [Tr. 15.] ALJ Spangler also noted records from Cumberland Orthopaedic (where Dr. Pratt practiced) confirming that Hicks received injections to his right shoulder which helped at first, but that Hicks still

---

[2] The medical records indicate that this doctor was probably Dr. Varghese at the Anne Wasson Clinic. [Tr. 326-45.]

[3] Hicks mentioned an orthopedic surgeon and family doctor but did not give his name and referred only to treatment in 2004 [Tr. 34, 35-36]. Because Hicks's counsel did not identify any treating professionals whom the ALJ ignored, the Court is left to guess at what counsel means by this assertion and can only do so by comparing Hicks's testimony to the medical records listed in the factual portion of his brief.

experienced severe pain when performing any type of overhead activity and had an "extremely decreased range of motion and strength." [Tr. 16.] ALJ Spangler noted, however, that after Hicks received stronger steroid injections he did not return to Cumberland Orthopaedic for further treatment from September 2005 until July of 2009, about the time he filed his second DIB claim. [*Id*.] ALJ Spangler also considered records from the Anne Wasson Clinic and from Somerset Pain Management (where Dr. Portales practiced), which the ALJ found supported Hicks's complaints of tenderness and chronic pain in his right shoulder and restricted joint movement. [*Id*.] ALJ Spangler noted that these records were further confirmed by the report of Dr. Hoskins who performed a consultative exam in September 2009. [*Id*.] Far from ignoring these records, ALJ Spangler relied on them when taking note of Hicks's physical limitations for purposes of determining the RFC, and he agreed with the medical reports of both treating and consultative professionals that Hicks suffers from pain and swelling in his right shoulder and is limited in the use of his shoulder. [*Id*.] Hicks does not point to any way in which the RFC fails to account for any portion of his medical records or any portion of a treating physician's opinion.

Third, it is important to note the procedural posture of this case and the time frame at issue here. Because a prior ALJ already denied Hicks's application for DIB on December 11, 2007, and because Hicks stipulated to an onset date of December 12, 2007, ALJ Spangler was required to apply the principles explained by the Sixth Circuit in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840-43 (6th Cir. 1997). The *Drummond* case requires that when an ALJ makes a final determination on an aspect of a disability claim, such as determining a claimant's RFC, subsequent ALJ's are bound by the prior ALJ's determination unless there is a showing of new material evidence or changed circumstances. 126 F.3d at 842 ("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous

8

ALJ."). To show such changed circumstances, "a comparison between circumstances existing at the time of the prior decision and circumstances existing at the time of the review is necessary." *Kennedy v. Astrue*, 247 F.App'x 761, 768 (6th Cir. 2007) (citing *Drummond*, 126 F.3d at 842). Thus, a prior ALJ's finding concerning a claimant's residual functional capacity has a preclusive effect on future administrative proceedings if no new substantial evidence is presented showing that the claimant's condition has significantly improved. *See, e.g., Blevins v. Astrue*, 2012 WL 3149343, *3 (E.D.Ky. July 31, 2012) (citing *Drummond*, 126 F.3d at 843).

In applying this principle, ALJ Spangler was required to focus on whether any new evidence dating from after the alleged onset date of December 12, 2007 contradicted or altered the previous ALJ's findings. Additionally, in order to be eligible for DIB, Hicks must establish that he became disabled on or before the expiration of his insured status. *See* 20 C.F.R. §404.315(a)(3); *see also Casey v. Sec'y of Health and Human Servs*., 987 F.2d 1230, 1233 (6th Cir. 1993) (explaining that evidence dated after the claimant's DLI is "outside the scope" of relevant inquiry for a reviewing court). Hicks's DLI was December 31, 2009 [Tr. 11, 13, 80], and thus the records referenced in Hicks's brief that are dated after that date are irrelevant to the instant claim. Accordingly, the records which are of key importance here are those between December 12, 2007 and December 31, 2009 showing new evidence that Hicks's condition changed since the prior ALJ's determination. Hicks's brief in support of summary judgment includes a long summary of his medical records that allegedly "prove" his disability, but his counsel makes no distinction among the dates of these records, nor does he attempt to explain how any of them present evidence contradicting the prior RFC determination. [R. 17-1 at 4-32.] Indeed, most of them date from before 2007, and do not indicate how any new medical evidence since that time would alter ALJ Spangler's duty to give deference to the prior ALJ's findings.

9

For instance, the reports from Dr. Varghese at the Anne Wasson Clinic confirms that Hicks continues to suffer from chronic right shoulder pain, has limitations on the use of his right shoulder, suffers from anxiety, and was prescribed pain medication. [Tr. 283-87.] Nothing in this report contradicts the limitations accounted for by the prior ALJ's determination of Hicks's RFC. Additionally, ALJ Spangler noted that following an examination in September 2009, consultative physician Dr. Hoskins assessed that Hicks had pain, tenderness, and decreased range of motion in his right shoulder, all of which are accounted for in the RFC, but that he also found full muscle strength, intact cranial nerves, and normal sensation. [Tr. 16, 296-98.]

With regard to Hicks's mental limitations, the ALJ also did not ignore the opinion of any treating professionals, nor does it appear that the ALJ gave their opinion any less than controlling weight. ALJ Spangler particularly noted treating psychiatrist Dr. Williams's report, and that Dr. Williams's records indicated Hicks "revealed good insight and judgment, normal speech, logical thought processes, average intelligence, no hallucinations or delusions, no suicidal or homicidal ideations, and normal cognition." [Tr. 16, 346-54.] Dr. Williams also described Hicks's response to therapy as "good." [*Id*.] ALJ Spangler also relied on the most recent psychological assessments from consultative professionals in determining that although Hicks suffered from moderate difficulties in social functioning, concentration, persistence or pace, he had no episodes of de-compensation and his mental impairments did not cause at least two "marked" limitations. [Tr. 14.] Hicks points to nothing in Dr. Williams's records that would contradict that finding. Moreover, as ALJ Spangler noted, none of the medical reports discussed above claim that Hicks is precluded from all work, nor do any of the reports describe Hicks as disabled or unable to perform all work. [Tr. 16-17.]

Thus, there is no indication that ALJ Spangler failed to give appropriate deference to the opinions of treating physicians. On the contrary, the ALJ's determination appears to be largely based on those opinions, and the RFC determination takes into account all the physical and mental limitations described by both the treating and consultative professionals. Hicks does not point to any medical evidence suggesting that his condition has changed since the prior ALJ's determination, and therefore ALJ Spangler gave appropriate deference to that decision. Thus, substantial evidence exists in the record to support ALJ Spangler's conclusions, and contrary to Hicks's assertion, the medical evidence does not "prove" Hicks is totally disabled.

**B**

Hicks's second and third arguments both address the ALJ's treatment of Hicks's assertions of pain. [R. 17-1 at 16-20.] Specifically, Hicks contends that the ALJ improperly evaluated Hicks's credibility concerning his impairments by failing to apply the Sixth Circuit's standard for evaluating pain according to the factors set forth in 20 C.F.R. § 416.929(c)(2), and by failing to set forth specific reasons for his credibility determination. [R. 17-1 at 17-18.]

Under the regulations, a claimant's "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) (citing 20 C.F.R. § 404.1529); *see also* 42 U.S.C. §423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . ."). There must also be objective medical evidence of an underlying condition supporting allegations of pain. *Duncan*, at 852. In *Duncan*, the Sixth Circuit set out a two-part test for evaluating subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or

>  (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

801 F.2d at 853. Thus, the second part of the test requires one of two alternatives. If the claimant establishes one of those requirements, the SSA regulations direct the ALJ to consider various factors in evaluating the claimant's subjective statements about the intensity and persistence of pain or other symptoms. *See* 20 C.F.R. §§404.1529(a), (c)(2)-(3). Such factors include: the claimant's daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate the pain; treatment other than medication the claimant has received for pain; and any other measures the claimant uses to relieve the pain. *Id.*; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3.

However, even when the medical records confirm the requisite objective medical condition supporting the claimant's complaints, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d 469, 475-76 (6th Cir. 2003) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1990)). When considering the *Felisky* factors listed above, the Sixth Circuit has also recognized that "determinations of credibility related to subjective complaints of pain rest with the ALJ and that the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly." *Duncan*, 801 F.2d at 852; *see also Walters*, 127 F.3d at 531 ("In evaluating complaints of pain, . . . an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.").

Here, ALJ Spangler cited the two-part *Duncan* test and specifically found that although Hicks's medically determinable impairments could reasonably be expected to produce the alleged symptoms, several of Hicks's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely credible because they were either unsupported or even contradicted by the evidence in the record. [Tr. 15.]  It is important to note that Hicks does not point to any part of his testimony that was ignored by the ALJ, nor does he explain how the ALJ failed to apply the test required by the SSA regulations outlined above.  In evaluating Hicks's credibility, the ALJ considered most, if not all, of the requisite factors and clearly explained his reasoning.  He noted Hicks's daily activities and ability to lift and carry 10 to 15 pounds, stand in one position for 10 to 15 minutes, walk 150 feet, and sit for 30 minutes at a time, and also considered that Hicks experiences severe pain when doing any type of overhead activity.  [Tr. 15-16.] ALJ Spangler considered Hicks's treatment and medications, noting that Hicks did not return to Cumberland Orthopedic until nearly four years later shortly after filing another claim for disability, and that although Dr. Pratt had prescribed some pain medication in 2005, Hicks had not returned for such treatment in over two years. [Tr. 15-16, 131, 266, 269-70.]   The ALJ noted that although Hicks testified that he suffers from neck, back, and shoulder pain, Hicks also admitted some improvement in his shoulder pain from injections, medications, and home exercises; that he only takes pain medication for his back but with no recommendations for injections or surgery; and that he never went to the hospital for emergency treatment. [Tr. 15-16, 34-40.]  Thus, Hicks's conservative treatment history did not support a conclusion of disabling pain.  The regulations do not require a detailed, item-by-item discussion of each credibility factor discussed in *Felisky v. Bowen*, 35 F.3d 1027, and although the ALJ should consider the factors, the ALJ need not engage in such an extensive analysis in every decision, especially where the

13

medical record does not objectively support the claimant's allegations. *Bowman v. Chater*, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam) (finding the ALJ can fulfill the requirements for evaluating claimant's complaints of pain by considering most of the *Felisky* factors but need not apply each one in every case).

Moreover, contrary to Hicks's assertion, ALJ Spangler did set forth specific reasons for his finding that certain of Hicks's statements were less than credible. For example, in addition to the reasons already mentioned above, the ALJ noted that Dr. Hoskins recorded his suspicion that based on his observations of Hicks in the parking lot, Hicks was not using 100% effort during the consultative exam. [Tr. 16, 296-98.] Additionally, Hicks testified that doctors suspect he may have bone cancer in his back, but there is no evidence in the record of such a diagnosis or of any tests to confirm that suspicion. [Tr. 15, 35-36.] Hicks also testified to experiencing multiple blackouts but never went to the hospital, and though he stated he was referred to a specialist concerning the blackouts and migraines, the record contains no evidence of such a referral or of any treatment with a specialist. [Tr. 15, 37.] ALJ Spangler also explained that one of the psychological evaluations submitted by Hicks's attorney was unhelpful because it revealed that some of Hicks's mental limitations were attributable to his marijuana usage and opined that Hicks likely would not have any mental impairments preventing routine task completion if he stopped using marijuana. [Tr. 16.] This opinion was partly confirmed by another report that Hicks's attorney relied on which noted only mild limitations in Hicks's ability to remember, understand, or carry out instructions and interact with other people in the workplace. [*Id.*] Despite Hicks's assertions concerning his anxiety, ALJ Spangler noted that his response to therapy was described as good, and that none of the reports in the record from either treating or consultative professionals revealed any significant mental limitations. [*Id.*] Rather, they only

noted mild or moderate limitations in Hicks's social and psychological functioning, all of which are accounted for in the RFC. [*Id*; *see also* Tr. 289-93, 297, 300-17, 357-74.]

Moreover, it is important to emphasize that ALJ Spangler did not entirely discredit Hicks's statements about the intensity, persistence, or limiting effects of his pain; but rather he determined that even the limitations Hicks alleges would not preclude light work as described in the RFC which specifically accommodates the limitations supported by the relevant medical evidence. [Tr. 16.] Additionally, ALJ Spangler noted that even though there was no evidence in the record to support a medically determinable impairment related to seizures or black outs, he still included hazard precautions in the RFC in case such symptoms were related to Hicks's anxiety. [Tr. 15.] As explained above, longstanding Sixth Circuit case law establishes that as long as the ALJ's decision is supported by substantial evidence, "reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509. Here, ALJ Spangler's findings take into account Hicks's limitations that are supported by evidence in the record, as well as some of his subjective complaints that are not entirely supported. Any possible error in discounting Hicks's credibility is harmless in light of the substantial evidence that supports the ALJ's conclusions. *See Ulman*, 693 F.3d at 714.

Finally, although Hicks contends that the ALJ failed to consider that Hicks's "excellent work history" supports a favorable credibility finding [*Id*. at 17], Hicks does not explain how his work history can overcome the other reasons for which the ALJ found his statements less than credible. Hicks references three cases from other circuits in support of this contention, but none of them support his assertion that ALJ Spangler erred in his case. While Hicks is correct that a good work record may bolster a claimant's credibility as to their physical limitations, [Tr. 17 (citing *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001)], ALJ Spangler's RFC

15

determination accounted for most if not all of the limitations about which Hicks testified. The ALJ discounted Hicks's assertion that he is completely disabled for the reasons set forth above, and Hicks's good work record by itself is not enough to overcome the substantial evidence in the record supporting that conclusion.

**C**

Lastly, Hicks states that the VE's testimony "proves" Hicks is "totally disabled." [R. 17-1 at 20.] Hicks simply asserts this, along with a quotation from a case describing part of the legal standard concerning hypothetical questions posed to a VE, but with no analysis whatsoever to the facts of his case. Hicks does not even attempt to explain how the ALJ erred in either posing hypothetical questions to the VE, or in how the ALJ evaluated the VE's testimony. As noted above, when claimants merely refer to issues "in a perfunctory manner, unaccompanied by some effort at developed argumentation," the issue is "deemed waived." *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. App'x 464, 466 (6th Cir. 2003) (deeming argument waived when claimant failed to brief the issue) (quoting *U.S. v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)); *see also Hicks v. Astrue*, 2010 WL 399099, at *3 (E.D.Ky. Jan. 26, 2010). Nevertheless, the Court notes that ALJ Spangler's hypothetical posed to the VE accurately accounted for Hicks's limitations as required. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (explaining that hypothetical questions posed to a VE "should include an accurate[ ] portray[al] [of the claimant's] individual physical and mental impairment[s]," and "should focus on [the claimant's] overall state including [ ] mental and physical maladies"). There is nothing in the record to suggest that the hypothetical questions posed to the VE did not accurately portray Hicks's limitations, nor does Hicks attempt to explain how ALJ Spangler's determination contradicted any part of the VE's testimony. "[I]ssues adverted to in a perfunctory manner, unaccompanied

16

by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quotations and quotation marks omitted). Thus, Hicks's perfunctory and completely undeveloped assertions concerning the VE's testimony are deemed waived.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Hicks's Motion for Summary Judgment [**R. 17**] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [**R. 15**] is **GRANTED**; and

3. Judgment in favor of Defendant will be entered contemporaneously herewith.

This 24th day of February, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge